Mr. Chief Justice Sharkey
delivered the opinion of the court.
On the first trial of this case, the plaintiff had a verdict in his *270 favor; but on motion of defendant it was set aside, and a new trial granted. To this the plaintiff excepted. On the second trial the defendant obtained a verdict, or rather a judgment on a special verdict, and the plaintiff brings up the case, and now insists that the court erred in granting the new trial, and also in rendering judgment in favor of the defendant on the special verdict.
It is believed that an investigation of the questions arising on the facts found by the jury will dispose of the case, and render it unnecessary to notice the questions raised by the exceptions taken to the granting of a new trial.
From the special verdict, we extract all the facts material to the inquiry.
The land in controversy, together with a large amount of personal property, was sold under executions which emanated on three different judgments; the first was rendered on the 30th of April; the second, the 26th of May; and the third, the 29th of May, 1838. The aggregate amount due on these judgments, at about the time of the sales in May, 1839, was $28,144. The executions were returnable to May term, 1839, of the circuit court of Yazoo county, and were levied in March; the personal property was sold in March and April for $28,173. Part of this sum was applied by the sheriff in satisfaction of a younger judgment in favor of Briggs, Lacoste & Co., without any levy under it having been made on the property. This appropriation was made on the solicitation of Ulsley, the agent of Briggs, Lacoste & Co., who also purchased the land as the agent of Marshall, the plaintiff’s vendor. This appropriation caused a deficit, and the land was sold, to make up that deficit, on the 6th of May, 1839. Marshall, through his agent Ulsley, became the purchaser, and soon afterwards sold to plaintiff, who went into possession, and so continued until 1841.
Mayrant recovered a judgment against the owner of this land, on the third Monday in April, 1838, in the circuit court of the United States, (which was of course a prior lien, as it was older than the others,) for the sum of $12,747. On this judgment execution issued, returnable to November term, 1838, on *271 which about the sum of $8000 was paid, and the marshal returned the execution, “ Suspended by order of plaintiff’s attorney.” Mayrant never authorized or approved this return, but on the contrary, when informed of it, he expressed his disapprobation, and refused to ratify it. Illsley, the agent and purchaser for Marshall, had examined the records of the United States court in April, 1839, and saw this return, and purchased with a knowledge of the fact. After Marshall had purchased under the three executions, as above stated, to wit, on the 27th of May, 1839, execution issued on Mayrant’s judgment, which was received by the marshal on the 24th of August, and levied on the land, which was sold on the 4th of November, 1839, to Frink, who sold to Yerger on the 12th of November; andón the 4th of December, 1840, Yerger sold to defendant, who was in possession when this action was brought.
These facts raise three questions; first, Were the three executions under which Marshall purchased, satisfied by the sale of personal property; and if so, did Marshal acquire no title to the land ? Second, Was the return of the marshal so far binding on Mayrant as to postpone his prior lien in favor of the junior judgments'? And third, Was the sale by Frink to Yerger, and by Yerger to defendant, void for champerty, the plaintiff being then in possession under an adverse title ?
On the first question, the law, under the circumstances, is with the defendant. The levy was made on the land and personal property at the same time, but the latter was sold in March and April, and the former in May. The personalty sold for more than enough to satisfy all the executions. When an execution has been satisfied, its operation should cease. It has performed its office. But it seems that Briggs, Lacoste & Co. had a younger execution against the same party which had been levied. Their agent desired to have that satisfied out of the sales of the personal property, and the sheriff complied with his request, and made the appropriation. This caused a deficit, and made it necessary to sell the land. But it was a misapplication of the money. The law fixes the rights of parties, and the sheriff caunot change these rights. To the executions under *272 which property is sold the proceeds belong. The sheriff cannot appropriate the money even to an older execution, unless it has been also levied. So far as the rights of the parties to the execution were concerned, the sheriff had no power to vary them, and the sale of a sufficient amount of property produced satisfaction. The case is precisely the same as though the sheriff had appropriated the money to his own use. Planters’ Bank v. Spencer, 3 S. & M. 305. The sale of the land was therefore made under executions which had been satisfied. Whether such a sale is absolutely void, and confers no title on a bona fide purchaser, is a question not free from difficulty, and we need not now decide it, being well satisfied that such sales are void, and confer no title upon one who buys with notice. 4 Cowen, 417; 7 Ib. 13; 8 Wend. 676. Marshall was a purchaser with notice. His agent, Ulsley, had procured the misapplication of part of the proceeds of the first sale. He seems to have been a vigilant actor in this whole transaction. Pie must have known that he was procuring part of the fund produced by the sale, to be applied to an improper purpose. The notice to the agent was notice to the principal.
But suppose the subsequent sale of the land was not actually void, then another question presents itself. Does the purchaser hold as from the date of the judgment 1 An execution which has been satisfied, ceases to be a lien; or rather the judgment lien is thereby extinguished. The lien is extinguished by the satisfaction, and the purchaser, if he can hold at all, can only hold from the date of his purchase. He cannot protect his title by a prior lien. This point was expressly decided in Banks v. Evans, 10 S. & M. 35. Marshall’s title, therefore, relates no further back than the date of his purchase, which was the 4th of November, 1839. If Mayrant’s judgment was then a subsisting lien, it must give a preference to the purchaser under it. This seems to obviate all the difficulty growing out of the stay of Mayrant’s execution. A valid and binding stay of execution only postpones the lien of the older judgment, so as to let in younger liens. It does not totally destroy the binding force of the older judgment. Then, even supposing that Mayrant’s lien *273 was postponed, and the other judgments let in ; of course when the lien of the junior judgments was destroyed, Mayrant’s was again let in; there was nothing to contend against it. Mayrant’s judgment was always a lien, and when the preferred liens were destroyed, it became the only lien on the property. The preferred liens were discharged by the sale of the personalty; they then ceased to operate as liens. When Marshall bought the land it was subject to no lien, but the execution lien, except Mayrant’s judgment, and that judgment has priority.
But suppose this to be an incorrect view of the subject propounded by the first question, it then becomes necessary to determine the law on the second question, to wit, Was the return of the marshal so far binding on Mayrant, as to postpone his prior lien 1 It is a general rule, that a party can only be deprived of his lien by his act or consent. If Mayrant’s attorney had power to suspend the execution, his act is the act of his client. And here we are first to inquire, who was meant by the word “ attorney,” employed in the return'? We can understand it in no other light, than as referring to the attorney in the cause in court. So it seems to have been considered in the finding of the jury, and indeed the argument on both sides has proceeded on that supposition. An attorney has not the power to destroy his client’s lien, by a stay of execution. It requires a special authority to enable him to do that. Dunn v. Newman, 7 How. 582; Clark v. Kingsland, 1 S. & M. 248; Keller v. Scott, 2 Ib. 81; Garvin v. Lowry, 7 Ib. 24; 10 Johns. 220. But it is said he may have had special authority, and for that reason his act is 'prima facie valid. When we speak of an attorney at law, we can ascribe to him only such power as the law has given him. The office and duties of such an attorney are well defined, and the party who maintains that he was clothed with more enlarged powers by special authority, must show it. A special agent has his powers defined by the letter of appointment, but the powers of an attorney are defined by law, and it will be presumed that he possesses no greater power, until the contrary is shown. The stay or suspension of the execution by the attorney was not binding on Mayrant. True, it might have become *274 so by his subsequent ratification, but Mayrant refused expressly to sanction the act of his attorney. He did not lose his lien then by the stay given by the attorney; did he do so by his failure to have execution issued 1 It is to be remarked, that the stay operated at most only on that execution, which was returnable to the November term, 1838. At that term then the stay expired, but Mayrant failed to have execution issued for six months, or until after the succeeding term of the court. We cannot say that this destroyed the lien. The effect of delay in suing out execution was very fully considered in the case of Foute v. Campbell, 7 How. 377, and the conclusion was, on the authorities cited, that mere delay, which did not amount to evidence of fraud, would not prejudice the lien of a judgment. The force of this objection is very much weakened by the fact, that Mayrant was a non-resident; and it does not appear when he first heard of the stay that had been given, or how long he permitted the execution to slumber, after he received the information.
Rut it is said the return of the marshal cannot be collaterally questioned, and it must therefore be taken as true that the execution was suspended by competent authority. The authorities cited prove nothing more than the general doctrine, that the return of an officer is, in general, conclusive on the parties to the record, when collaterally called in question. But we do not think this rule can have any’application in the present case. There is no effort to impeach the return. It is a mere question of law as to the effect of the fact certified by the return, taking it to be true. Nothing in the return is denied. The jury found that Mayrant’s execution was “suspended by order of plaintiff’s attorney.” What is the legal effect of such a suspension 1 that is the question. We say that Mayrant was not bound by it, because the attorney had no such power. The authorities cited, only prove that the truth of a return cannot be collaterally questioned; its legal effect is a very different thing. Besides, it is now too late to raise such a question. If there was an effort to impeach the return, the evidence by which it was sought to do so, should have been excluded from the jury. We *275 are now considering of a special verdict, and must take every thing in it as true, and as having been properly found, as no exception was taken.
As to the third question, it may be sufficient to remark, that it might be entitled to great consideration, but the plaintiff is not in a condition to urge it. He is out of possession, and without title, and cannot claim to recover, because the tenant in possession holds by a void title.
On the. question of satisfaction by the sale of the personal property, it is necessary to add a few words. As the facts are presented by the verdict, it appears that the property brought about twenty-nine dollars more than the executions amounted to. It may be that the costs would have increased the amount of the executions above the amount of the sales, and that a balance would still have been due, which would have justified the subsequent sale of the land. But this is a question not presented by the verdict. We cannot assume that the amount due on the executions was greater than the jury have found it to be.
We have not thought it necessary to enter into a full inquiry as to the correctness of the first decision, in granting a new trial, since, if there was even error in that decision, it would not settle or change the rights of the parties. We have supposed that the case was brought up'on the special verdict, which is presumed to contain every fact, for the purpose of having the title finally settled.
Judgment affirmed.